AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of New Mexico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  MJ 25-729 JMR |
| JAMISON R. WAGNER | ) | |
| (year of birth 1984) | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

**FILED**
United States District Court
Albuquerque, New Mexico
_____
Mitchell R. Elfers
Clerk of Court

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Feb. 9, 2025 and Mar. 30, 2025___ in the counties of ___Sandoval / Bernalillo___ in the

_____ District of ___New Mexico___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 844(i) | Arson of Building and/or Vehicle Used in Interstate Commerce |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael Hopkins, FBI  / Jonathan R. Smith, ATF
*Printed name and title*

Telephonically sworn and electronically signed.

Date:    ___4/12/2025___

_____
*Judge's signature*

City and state:    ___Albuquerque, New Mexico___

Jennifer M. Rozzoni, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE ARREST OF
JAMISON R. WAGNER
YEAR OF BIRTH 1984

Case No. _____

**AFFIDAVIT IN SUPPORT OF
APPLICATION FOR ARREST WARRANT**

I, Jonathan R. Smith, and I, Michael L. Hopkins, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      We make this affidavit in support of the arrest of Jamison R. Wagner, year of birth 1984 (hereafter "WAGNER"), for violations of 18 U.S.C. § 844(i), that being arson of building and/or vehicle used in interstate commerce.

2.      The facts in this affidavit come from our personal observations, our training and experience, and information obtained from other law enforcement agents, agencies, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of our knowledge about this matter.

3.      Based on our training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 844(i), arson of a building and vehicle in interstate commerce have been committed.

**ATF CASE AGENT BACKGROUND**

4.      I, Jonathan R. Smith (Affiant Smith), am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since June of 2020. I am currently assigned to the Albuquerque I Field Office, Phoenix Field Division. In this capacity, I am tasked with investigating violations of federal

criminal law, to include violations of federal firearms, narcotics, arson and explosives statutes. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States who is empowered by law to conduct investigations and make arrests for the offenses enumerated in Title 18, 21, and 26 of the United States Code.

5.      I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program, and the ATF National Academy Special Agent Basic Training Program. During these programs, and since that date, I received instruction in and practiced the investigation of violations of federal firearms, narcotics, arson and explosives statutes.

6.      Prior to my employment with ATF, I served as a Police Officer with the Chandler Police Department in Chandler, Arizona for approximately seven years. I am a graduate of the Arizona Law Enforcement Academy. While employed as a police officer, I participated in and conducted hundreds of criminal investigations involving various state criminal violations. During that time, I also made hundreds of arrests for violations of state law.

7.      As a result of my training and experience, I am familiar with federal criminal law, including firearms, narcotics, arson and explosives statutes. I have also received training and gained experience in the investigation of violations of these statutes, and specifically in topics including; interview and interrogation techniques, arrest tactics, preparation of arrest and search warrants, investigative methodology, surveillance techniques, firearms identification and nomenclature, firearms trafficking investigations, narcotics investigations, explosives investigations, and fire related investigations. Additionally, I have received extensive specialized training and experience in fire investigation methodology, techniques, and fire science.

## FBI CASE AGENT BACKGROUND

8.      I, Michael L. Hopkins (Affiant Hopkins), am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since September 2015. I am currently assigned to the Albuquerque Field Office.  My primary duties as a Special Agent with the FBI are working International Terrorism, Domestic Terrorism and Firearms matters. I have received training during in my time with the FBI to include Counterterrorism investigations, the investigative use of cell towers and cellular technology, the use of FISAs, Human Intelligence Operations, Drug and narcotics trafficking investigations, Firearms investigations, Criminal Financing investigations, the conduct of surveillance, and other investigative techniques. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state and federal law enforcement agencies. As a Federal Agent, I am authorized to investigate violations of the laws of the United States, including crimes relating to special territories and have authority to execute arrest and search warrants issued under the authority of the United States.

## PROBABLE CAUSE

9.      This investigation concerns two separate arson offenses: one on February 9, 2025, at the Tesla Albuquerque Showroom in Bernalillo, New Mexico (Santa Ana Pueblo, Sandoval County), and a second offense on March 30, 2025, at the Republican Party of New Mexico Party Office in Albuquerque, New Mexico (Bernalillo County). Based on the facts outlined below, there is probable cause to believe WAGNER committed these offenses.

A. **February 9, 2025 – Tesla Albuquerque Arson, Bernalillo New Mexico (Tesla Fire)**

10.     On February 9, 2025, at approximately 03:13 AM MT,[1] vandalism and a fire occurred at the Tesla Albuquerque Showroom at 1300 Jemez Canyon Dam Rd, Bernalillo, New Mexico 87004. The Santa Ana Pueblo Police Department (SAPPD), Sandoval County Fire Department (SCFD) and New Mexico State Fire Marshals Office (NMSFMO) initially responded to the scene and then requested ATF investigative assistance in determining the origin and cause of the fire. ATF Special Agents and Affiant Smith, a Certified Fire Investigator Candidate, responded to the scene, along with SAPPD, SCFD, and NMSFMO.

11.     Responding investigators found two Tesla Model Y vehicles involved in a fire in the parking lot outside the Tesla Showroom. One Tesla was significantly damaged during the fire, while the second exhibited lesser damage. A fire scene examination was conducted, and based upon the data collected during the examination, an ATF Fire Investigator classified the fire as incendiary, meaning an intentional human act resulted in a fire occurring in a location when and where fire should not have occurred.

12.     Additionally, there were obvious signs of vandalism on the property, including graffiti spray painted onto the structure walls and 5-6 vehicles in the parking lot. Red and black spray paint was used to draw phrases and symbols on the east wall of the structure and approximately five other vehicles parked on the east side of the structure. The graffiti phrases included, "Die Elon," "Tesla Nazi Inc," and "Die Tesla Nazi." In several instances, some letters in the phrases were replaced with symbols resembling a swastika. The damaged vehicles in the parking lot were spray painted with similar swastika symbols on the windshields, windows, or

---

[1] All times noted in this affidavit are Mountain Time unless otherwise noted.

body panels. Several Tesla vehicles also had mechanical damage to the windows, consistent with attempted or successful forced entry. Photographs of the damaged or destroyed vehicles and graffiti are below:



*Fig. 1 – Damaged Tesla*



*Fig. 2 - Graffiti*

13.     During the scene examination, investigators photographed and documented the fire scene and damaged property. While examining the two burned Tesla Model Y vehicles, investigators collected one intact glass container/incendiary device with a green metal lid inside the lesser fire damaged vehicle. The intact device or container held a vivid blue, gelatinous substance with a strong odor of an ignitable liquid, later confirmed by the ATF forensic laboratory as an improvised napalm material. At the time of identification and collection, investigators noted

a hand-written capital "I" or "H" letter on the top of the green metal lid. The remains of a heavily damaged second metal jar lid, believed to be a separate incendiary device or container of ignitable material, was found in the more fire damaged Tesla vehicle. A photograph of the described container from the lesser damaged Tesla is below:



*Fig. 3 – Container in Tesla*

14.    Investigators collected numerous items of evidence, including fire debris, components of suspect incendiary devices or containers, and photographic evidence of the graffiti painted onto the structure. The evidence collected was submitted to the ATF forensic laboratory for fire debris analysis, latent print examination, and DNA examination.

15.    During the investigation, ATF and FBI investigators collected surveillance video recordings from the Tesla Showroom and surrounding businesses. The Tesla surveillance video recorded around the time of the fire and vandalism showed a light-colored sedan parking in the distance, east of the Tesla Showroom. A tall subject, later determined to be WAGNER, approached the facility on foot while wearing all black clothing, a black mask and hoodie, and carrying a white box.



*Fig. 4 – Suspect with white box*

16.     The subject used spray paint from the box to draw graffiti on parked vehicles and the Tesla Showroom structure. The subject then attempted to break or successfully broke windows on several vehicles, including the two damaged vehicles pictured below. The subject appeared to place a container or incendiary device inside the two aforementioned Tesla vehicles through windows that the subject broke. A small flickering light, consistent with a transient ignition source, was observed in the subject's hands before flame rapidly appeared inside one vehicle. As shown in figure 5 below, at one point after the flame appeared inside the Tesla vehicle, the subject's hoodie fell back, revealing what appeared to be balding on the top of the subject's head. The subject left the area rapidly after the fire started inside one vehicle.



*Fig. 5 – Fire igniting inside Tesla vehicle*

7

17.     Based on surveillance, the subject was identified as a light-skinned male. Additionally, based on the subject's appearance and the height of the placement of the graffiti on the building structure, it was determined the subject is likely 6 feet or taller.



*Fig. 6 – Tesla arson suspect*

**B.   March 30, 2025 – Republican Party of New Mexico Arson, Albuquerque, New Mexico (RPNM Fire)**

18.     On March 30, 2025, at approximately 05:55 AM, a fire was reported to Albuquerque Fire Rescue (AFR) at the Republican Party of New Mexico (RPNM) party office located at 5150 San Francisco Rd. NE, Suite A, Albuquerque, New Mexico 87109. At approximately 5:54 AM, a man walking his dog called 9-1-1 to report a fire near San Francisco and Jefferson. When firefighters responded, they reported seeing flames at the door of the suite. The fire was extinguished shortly after AFR arrival. The fire resulted in damage to the front door and entry/lobby area and smoke extension throughout the structure. Additionally, responding firefighters and investigators discovered graffiti with the phrase "ICE=KKK" on the south wall of the structure.

19.     AFR then requested ATF investigative assistance in determining the origin and cause of the fire. ATF Special Agents and Affiant Smith, a Certified Fire Investigator Candidate, responded to the scene, along with AFR, APD, and FBI. Affiant Smith smelled an odor consistent

with gasoline upon arrival. A fire scene examination was conducted, and based upon the data collected during the examination, an ATF Fire Investigator classified the fire as incendiary, meaning an intentional human act resulted in a fire occurring in a location when and where fire should not have occurred. A photograph of the initial fire scene is attached below:



*Fig. 7 – Fire damage at RPNM*

20.     During fire scene examination, investigators discovered evidence of shattered glass materials and the odor of ignitable liquids consistent with the use of incendiary devices or containers of ignitable liquids used to initiate a fire. Among the fire debris outside the front office door, investigators identified and collected shattered glass materials consistent with two to three separate glass containers, and two metal lids consistent with the size and appearance of common liquor and food products. One set of glass materials identified and collected on scene was consistent with a blue bottle of Bombay Sapphire Gin. The two lids that were identified and collected appeared to be a silver and red lid to an olive container, and a green and white, gingham pattern lid consistent with a Smucker's brand "Natural" spread. The green and white lid was noted to have a hand-written capital "I" or "H" letter on the top of the lid. Investigators noted that the

"I" or "H" symbol on this lid was substantially similar in appearance and position to that observed at the scene of the fire involving Tesla vehicles on February 09, 2025. A photograph of the green and white metal lid from the RPNM office is attached below:



*Fig. 8 – Fire debris with lid*

21.     Additionally, while processing the fire scene investigators observed graffiti on the south side of the involved structure. The graffiti appeared to be stenciled letters, spray-painted in red, and read "ICE = KKK." Investigators noted that the color of red paint appeared to be substantially similar to the color of red paint used to spray paint graffiti at the Tesla fire scene on February 09, 2025. A photograph of the graffiti at the RPNM office is attached below:



*Fig. 9 – Graffiti at RPNM*

22.     Investigators collected numerous items of evidence, including fire debris, components of suspected incendiary devices or containers, and evidence of the graffiti painted onto the structure. The evidence collected was submitted to the ATF forensic laboratory for fire debris analysis, latent print examination, and DNA examination.

23.     Investigators conducted an interview with Witness 1[2], an employee of the RPNM, who stated that on Sunday March 30, 2025, at approximately 1:13 AM, she received a text message to her phone of motion at the front door of the party's office building. While she did not notice the notification at that time in the morning, she was able to later view surveillance footage from a camera inside the office later that morning. Witness 1 showed investigators the surveillance recording, which showed a fire at the front door of the office at approximately 1:13 AM. (As described above, however, the fire was not reported to emergency services until 5:54 AM, when a man walking his dog called 9-1-1 to report a fire.)  Witness 1 said she left work on Friday around "4:50 ish" in the evening and described the business park as "not that busy" with the businesses being open "nine to five, Monday to Friday." She also said the area is "always dead on a Saturday."

24.     Further review of the video footage Witness 1 had access to show the door of the suite and a United States Postal employee delivering mail to the address through a mail slot in that door on Saturday March 29, 2025, at approximately 12:55 PM. The mail landed on the floor inside the door. The postal employee, Witness 2, was interviewed and said he recalled delivering two pieces of mail (no packages) at that location. He has delivered to the address for the last 10 years and knows he's delivered mail containing rice and glitter, used to harass the RPNM. The door

---

[2] Here and throughout, witness names are anonymized to protect their right to privacy, as well as the ongoing criminal investigation.  The identities of these anonymized witnesses are known to law enforcement.

appeared to remain unchanged until approximately 1:13 AM on March 30, 2025, when a small fire was visible to the camera. Glare on the door made it difficult for the camera to capture the exterior of the business. It is not known whether the fire triggered the text alert to Witness 1, or whether the alert was from an electrical short or the flickering motion of the flame.

### C. **Connections Between Tesla Albuquerque Showroom Fire and RPNM Fire**

25.     The fire debris and suspected incendiary device evidence from both the February 9, 2025 Tesla Fire and the March 30, 2025 RPNM Fire were independently submitted to an ATF forensic laboratory around the time each investigation was initiated. The two investigations show similarities, including the fact that the suspect used gasoline as an accelerant, jars commonly used for food to transport or move that accelerant, and red spray paint. Both arsons occurred at night, on the weekend, and the arsonist parked outside of the parking lot of the business. Most significantly, both arsons involved a jar with a lid with a hand-written capital letter "I" or "H," shown below.

 

*Fig. 10 - Tesla Arson*           *Fig. 11 - RPNM Arson*
*(February 9, 2025)*              *(March 30, 2025)*

D. **Suspect Vehicle Identification**

26.    Following the RPNM arson, law enforcement began canvassing and collecting surveillance video near the incident.  Investigators collected video surveillance from 5051 suite B, just north of the RPNM office.  Video footage shows that at approximately 1:08:50, on March 30, 2025, a light is seen moving across the upper left corner of the video just before a large flash of light is seen where the front door to the RPNM office is located.  This is consistent with the throwing and ignition of an incendiary device similar to and commonly referred to as a Molotov cocktail.

27.    Agents canvassing 101 Sun Ave. NE (south of the RPNM building) viewed surveillance footage of a vehicle, arriving at approximately 1:00 AM.[3] The vehicle, which agents could only initially describe as a car, drove past 101 Sun Ave. NE at approximately 12:57 AM before going out of view. The car returned into view on the footage at 1:00 AM, and at 1:01 AM parked on the north side of the 101 Sun Ave. NE building, likely on Sun Ave. The footage is "black and white," and it appears one person exited the car from the driver's door. That person walked towards RPNM headquarters and at approximately 1:08 AM a flash was observed. It is likely this flash was the ignition of the ignitable liquid and its vapors and the start of the fire. The vehicle was then seen leaving the parking lot at approximately 1:09 AM.

28.    A canvas of a bank at 7644 Jefferson, approximately 500 feet west of the RPNM office, showed a white sedan turning from Jefferson onto Sun Ave at 12:57 AM. Other vehicles are observed on the bank surveillance cameras, though none continue onto Sun Ave. The other

---

[3] All time estimates in this paragraph are based on the timestamps shown on the video surveillance.  On March 31, 2025, an agent compared the time stamps from live surveillance video to their cell phone time and were able to confirm these timestamps were roughly accurate.

vehicles appear to use the ATM and leave. None of the other vehicles were white in color. Therefore, in connection with the surveillance from 101 Sun Ave., this vehicle is believed to be the subject's car.



*Fig. 12 – Suspect vehicle near RPNM scene*

29.     Another canvas, this time of 100 Sun Ave. NE, an address approximately 100 feet east of the RPNM office yielded an image of a white sedan leaving the area at approximately 1:09 AM. The white sedan was observed going east on San Francisco Rd. NE. The direction is discernable by San Francisco Rd. NE running west to east and the Pyramid Marriott being behind the sedan in the background. The top photo below shows the vehicle leaving. The second photo below shows the same sedan at a slightly different angle and zoomed in.



*Fig. 13 – Suspect vehicle near RPNM scene*



*Fig. 14 – Suspect vehicle near RPNM scene*

30.     Once the sedan reached the eastern end of San Francisco Rd. NE, the road "Ts" into the one-way road of Pan American. The sedan was forced to go south. Surveillance footage from a fast-food restaurant showed the white sedan transition from Pan American onto Osuna and heading west. The sedan was observed by traffic cameras going through the intersection of Osuna and Jefferson and staying west on Osuna. A business on Osuna provided surveillance footage of the car passing its location at approximately 1:14 AM (see below). Google Maps estimates the drive time from RPNM to the business is approximately 5 minutes along the route and with an approximate departure of 1:09 AM, observing the car at 1:14 AM fits the timeline for the suspect car. A Task Force Officer canvassed another business, approximately 0.8 miles west of the first business, and observed surveillance footage of the sedan at approximately 1:15:29 AM. Again, the sedan matches our timeline, covering the distance slightly faster than the two minutes estimated by Google.



*Fig. 15 – Suspect vehicle leaving RPNM scene*

31.    Canvassing for video surveillance continued to move west and a canvas of a business at 9310 Coors Blvd. NW yielded a video. The video showed a white sedan going north on Coors Blvd. When rewound, it was clear from the movement of the headlights that the white sedan had exited westbound Paseo Del Norte Blvd., turning north on Coors Blvd. From the last observed location of westbound Osuna, near the second business on Osuna, the white sedan could have used Second Street to take Paseo Del Norte across the river. The white sedan observed on Coors had the appearance of being the subject vehicle. Traffic on the camera was light and this was the only vehicle for several minutes that utilized Paseo Del Norte. The timestamp of the camera was approximately 1:23 AM and matched estimated travel time from RPNM.

32.    Using the photos above, agents interviewed several car dealerships and a body shop regarding the suspect vehicle. To summarize, with the exception of Hyundai, all of the car dealerships said the car was not one of their models, but some suspected it was a Hyundai. The interviewee at Hyundai, Witness 3, a long-term employee of Hyundai, when shown the Sun Ave. picture above, and two traffic camera photos, said it was certainly a Hyundai Accent between 2012 and 2015. He was certain about the year because he recalled the change in body style occurred near the beginning of his employment. The interviewee was able to explain that the small shapes in the bottom of the bumper were reflectors which were indicative of the Accent model. The taillights in that body style were more pointed. After 2015, the taillights went to more square shape. Witness 3 was re-interviewed once the photos from the traffic cameras were obtained (see below). Witness 3 was asked if his opinion changed, and he said he was more certain the car was a Hyundai Accent because the shape of the front bumper was from a range of years 2012 to 2015.

 

*Fig. 16 – Traffic camera photo*          *Fig. 17 – Traffic camera photo*

33.    Following this vehicle identification, agents focused the search on white sedans, and specifically the Hyundai Accent model, in the range of 2012 to 2015, in the Albuquerque area.

**E.    Identification of Jamison Wagner as the Arson Suspect**

34.    Based on an investigative lead developed by law enforcement through scene evidence, investigators located an Albuquerque resident named Jamison Wagner with a year of birth of 1984 (WAGNER).  According to his New Mexico driver's license and records available to law enforcement, WAGNER is 6ʹ4ʺ and owns a white, 2015 Hyundai Accent GLS.

35.    On April 9, 2025, an agent following up on this lead conducted surveillance at WAGNER's residence in Albuquerque and observed a male in the garage of the residence. The garage door was open, and law enforcement was able to confirm the male was WAGNER. The agent also observed a white Hyundai Accent in WAGNER's garage. From this picture, the height of WAGNER was noticeable, and it appeared that the 6ʹ4ʺ height reported in his driver's license height was accurate. WAGNER's license plate was confirmed as a New Mexico Plate, and the vehicle's registration (which is now expired) was examined along with a driver's license photo of the registered owner and the male was further confirmed as WAGNER.

36.    In addition to his height and vehicle being of investigative significance, WAGNER's general physical description, some facial features, complexion, use of eyeglasses,

and general appearance seemed to be substantially similar to that of the individual captured on surveillance video at the Telsa arson.


*Fig. 18 – Photo of Wagner (Nov. 2024)*


*Fig. 19 – Driver's license (Feb. 2024)*


*Fig. 20 - Tesla arson suspect (Feb. 9, 2025)*


*Fig. 21 - Tesla arson suspect (Feb. 9, 2025)*

37.    In addition to the make, model, and color of WAGNER's car being substantially similar to the vehicle observed in the area of the RPNM Fire on March 30, 2025, it also matched the general description of the vehicle distantly observed on the Tesla Fire surveillance recordings (described as a "light colored sedan"). Therefore, investigators had reason to believe that a vehicle matching WAGNER's vehicle was observed in the area of both the Tesla Fire scene and the RPNM Fire scene.

### F.  **Residential Search Warrant**

38.     On April 11, 2025, based on the information described above, as well as additional investigative leads, law enforcement sought and obtained a warrant for WAGNER's residence, vehicle and person, to search for evidence related to the arson offenses.

39.     On April 12, 2025, investigators executed the federal search warrant at WAGNER's residence. During execution of the warrant, investigators located and seized significant evidence of WAGNER's involvement in the fire incidents that occurred on both February 9, 2025, at Tesla, and March 30, 2025, at the RPNM office. Evidence located includes: a white cardboard box containing eight (8) assembled suspected incendiary devices; black and red spray paint; a box of blue Styrofoam egg cartons consistent with the blue color and polystyrene materials identified in the Tesla Fire evidence; materials for the manufacture of additional incendiary devices; and ignitable liquids consistent with the gasoline used at the Tesla and RPNM fire scenes. Of note, one jar located in the white cardboard box had the same green gingham style lid as seized from the RPNM Fire, and several jars were marked with the letter "I" or "H" as seen in both prior scenes. Full analysis of the scene evidence and seized electronic devices is pending.



*Fig. 22 – Box with incendiary devices*

19



*Fig. 23 – Blue Styrofoam egg cartons*

40.    Clothing located at WAGNER's residence also links him to the Tesla Fire scene. Investigators located and seized a black hooded jacket with red spray paint overspray, along with black and white shoes consistent with the appearance of the suspect on surveillance footage from the Tesla Fire scene.



*Fig. 24 – Black hoodie with red overspray*

41.    Investigators located a cardboard stencil in WAGNER's garage with the phrase "ICE=KKK" with red spray paint on the perimeter. This is consistent with the creation of the graffiti at the RPNM Fire scene. On the garage floor was a small spray of black paint and small spray of red paint, indicative of test spraying.



*Fig. 25 – Stencil inside Wagner's garage*

42.    WAGNER's white Hyundai Accent was parked in the garage at the time of the search. The turquoise license plate registered to the vehicle was attached to the trunk but was loose to the touch. It was noted that the mounting screws were not seated and had scratches visible to the naked eye. As pictured above in figure 22, an expired yellow New Mexico plate was found in the box with the spray paint, but the tag was not registered to WAGNER. The lights in the trunk hatch, designed to illuminate the plate, were covered with metallic tape. Investigators believe all of this was a deliberate, broad attempt to avoid identification of the vehicle during commission of the arson offenses.

43.    In light of all the facts detailed above, including the significant corroborating evidence located at WAGNER's residence, there is probable cause to believe that Jamison

WAGNER committed violations of 18 U.S.C. § 844(i) on February 9, 2025, and March 30, 2025, in the District of New Mexico.

**INTERSTATE NEXUS**

44.    With respect to establishing interstate nexus as to both arsons, there is probable cause to believe that the property and businesses utilize interstate commerce, and therefore, the arsons affected interstate commerce.

45.    First, as related to the offense at the Tesla Fire scene, Tesla is headquartered in Austin, Texas, and the vehicles sold in New Mexico are transported to New Mexico from Tesla's manufacturing facilities. The Tesla Model Y, like the two vehicles damaged or destroyed in the incident, are manufactured in Fremont, California, Austin, Texas, Brandenburg, Germany, or Shanghai, China. Therefore, the vehicles damaged by the arson moved in interstate transport prior to the date of fire.

46.    Second, regarding the offense at the RPNM office, the executive director of the RPNM indicated that the RPNM purchases hats, t-shirts, bumper stickers, signs and pins from "The MAGA Mall," which are available for sale in the RPNM office.  Based on law enforcement review of the website for "The MAGA Mall," they have an area code in southern Florida and appear to sell items across the United States.  The RPNM also purchases radio spots, maintains a website and uses social media. As a consequence of the arson fire, RPNM was forced to close for a period of time which impacted their business operations.

## **CONCLUSION**

47.    In summary, based on the above information, we submit there is probable cause to believe Jamison WAGNER committed violations of 18 U.S.C. § 844(i), that being arson of a building and/or vehicle on February 9, 2025, and March 30, 2025, in the District of New Mexico.

Respectfully submitted,

_____
Jonathan R. Smith
Special Agent
Bureau of Alcohol, Tobacco, Firearms,
and Explosives

_____
Michael L. Hopkins
Special Agent
Federal Bureau of Investigation

Electronically subscribed and telephonically sworn to
me on April 12, 2025

_____
JENNIFER M. ROZZONI
UNITED STATES MAGISTRATE JUDGE