IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                             CR No. 25-881-KWR

JAMISON WAGNER,

        Defendant.

## DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANT'S OPPOSED MOTION TO REVOKE MAGISTRATE JUDGE'S DETENTION ORDER

The Defendant, Jamison Wagner, by and through counsel Noah W. Gelb, Assistant Federal Public Defender, submits the following reply to the United States' Response to Defendant's Opposed Motion to Revoke Magistrate Judge's Detention Order. [Doc. 26]. Mr. Wagner respectfully requests that the Court grant his Sealed Opposed Motion to Revoke Magistrate Judge's Detention Order [Doc. 24] because there are conditions or release that this Court can set that will reasonably assure Mr. Wagner's appearance in court as required and the safety of any other person and the community.

## ARGUMENT

"Unless the right to bail is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle,* 342 U.S. 1, 4 (1951). The Tenth Circuit has affirmed that, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Ailon-Ailon,* 875 F.3d 1334, 1336 (10th Cir. 2017) (quoting *United States v. Salerno,* 481 U.S. 739, 755 (1987)). In considering the question of pretrial release, the court must impose the least restrictive condition or combination of conditions necessary to "reasonably assure" the defendant's appearance as required and to "reasonably assure" the safety

of any other person and the community." 18 U.S.C. § 3142(c). In making this determination, the Bail Reform Act directs courts to consider the factors set forth under 18 U.S.C. § 3142(g). "[T]statute requires that the court consider a range of alternatives to pretrial confinement before ordering detention and, if detention is ordered, to explain why lesser conditions are inadequate." *United States v. Gerkin*, 570 Fed. Appx. 819, 822 (10th Cir. 2014). Doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (citation omitted).

1. <u>The Magistrate Court properly found that Mr. Wagner rebutted the presumption of detention.</u>

The Magistrate judge correctly found that Mr. Wagner met his burden of production to overcome the presumption of detention under 18 U.S.C. § 3142(e)(3). The Tenth Circuit has found that a defendant need only produce "some evidence" to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) ("The defendant's burden of production is not heavy, but some evidence must be produced."). Other Circuits apply the same standard. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (A defendant simply needs to produce "some evidence that he will not flee or endanger the community if released."); *see also United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir.1990) ("[T]o rebut the presumption, the defendant must produce some evidence."). Absent a Circuit split, this Court may consider cases from all these jurisdictions as persuasive authority.

A defendant's burden of proof to rebut the presumption is not high. *See United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001) (a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight); Here, Mr. Wagner carried his burden of production by establishing strong community and familial ties, long residency in the community, substantial

education and employment history, and near total lack of criminal history. These factors all serve to rebut the presumption that Mr. Wagner is a flight risk or danger to the community. *See United States v. Holguin*, 791 F.Supp2d 1082, 1089 (D.N.M. 2011) (defendant's evidence of strong ties to the community sufficient to meet burden of production to rebut presumption of detention) (*United States v. Selman*, 691 F.Supp.3d 1334, 1342 (N.D. Okla. 2023) ("evidence of strong family support, stable employment, and lack of criminal history are 'some evidence' sufficient to rebut the presumption that [defendant] is a flight-risk and danger to the community"); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (evidence of lawful immigration status, employment history, and lack of criminal record sufficient to rebut presumption).

2. *Mr. Wagner's history and characteristics weigh heavily in favor of release.*

Under Section 3142(g), the Court must consider a defendant's history and characteristics including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" These factors support release. Numerous community members have submitted letters of support discussing Mr. Wagner's character. He is universally described as kind, compassionate, and gentle. He has a supportive and loving family, a strong employment history, financial ties to New Mexico including a home mortgage, long residence in the community, strong community ties, no history of drug or alcohol abuse, and a single prior traffic citation, for which he appeared in court. Additionally, he has several medical and mental health conditions for which he receives medical treatment in the community.

The United States dismisses these stabilizing factors because they "existed when Defendant is alleged to have committed the charged crimes." [Doc. 26 at 18]. This argument is specious. A person's history and characteristics nearly always exist at the time of an alleged offense. If true, the United

States' argument would foreclose release in almost every case (because the defendant's history and characteristics did not prevent the alleged crime). This tautological statement does not eliminate the importance of a defendant's personal characteristics that provide stability, safety, and accountability, and therefore support release pending trial. Regardless of whether these factors existed when the alleged crimes occurred, they are certainly mitigating now, and they provide a substantial assurance that Mr. Wagner will not reoffend or seek to avoid this Court's justice while this case is pending. Mr. Wagner's supportive family, lack of criminal history, education and employment experience, and other positive characteristics all reduce the risk of recidivism, suggest likely compliance with court orders and supervision conditions, and reduce the risk of flight.

3. **_The government fails to adequately address 18 U.S.C. § 3142(g)(4) or articulate why a third-party release with strict conditions cannot address the concerns posed by Mr. Wagner's release._**

    The United States' Response inexplicably fails to address the final factor in Section 3142(g): the nature and seriousness of the danger to any person or the community that would be posed by the Mr. Wagner's release. [Doc. 26 at 12]. While the United States' Response devotes ample word count explaining why the alleged crimes in the matter are dangerous in themselves (i.e. the nature and circumstances of the offense charged), it completely fails to articulate why Mr. Wagner still poses a danger now - following his arrest, apprehension, and indictment. Similarly, it conducts no analysis and seemingly offers no argument as to why the wide array of conditions available to this Court cannot eliminate or reasonably mitigate the risk, despite the fact that this inquiry is central to the detention question. *See* 18 U.S.C. § 3142(f) ("The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community."). The United States completely fails to discuss potential conditions of release (and their purported inadequacy) in its Response.

4

There is no question that arson is a potentially dangerous crime. However, the Court's inquiry under Section 3142(f) does not end with the conclusion that a defendant's charges are dangerous by definition. Instead, the Court must inquire whether the defendant poses a present danger, and whether the danger can be cured by conditions of release. *See e.g. United States v. Begay*, 315 Fed.Appx. 53, 2009 WL 389715 (10th Cir. 2009) (addressing Section 3142(g)(4) and affirming detention order after finding defendant's argument for release to a halfway house unpersuasive). The United States apparently seeks to avoid this crucial inquiry by focusing only on the nature and circumstances of the charged crimes.

Ignoring Section 3142(g)(4) misses a key point – that the alleged crimes in this case would and could not by reproduced absent the circumstances alleged by the government at time of their commission – circumstances that this Court can eliminate with strict conditions of release. What Mr. Wagner is alleged to have done in this case - manufacturing improvised incendiary devices in his home and garage - simply would not occur under the supervision of a third-party custodian. Mr. Wagner's family members, all law-abiding citizens, would not tolerate that kind of behavior in their home. Nor would Mr. Wagner, who values his family's safety and wellbeing above nearly everything else, choose to place them at risk by engaging in dangerous or criminal conduct while residing with them. These assurances would be further bolstered by supervision conditions available through pretrial services which should include, at a minimum, home visits by a supervising officer, regular check-ins, management of mental health treatment and counseling, restrictions on internet use, and GPS location monitoring. These conditions would ensure that Mr. Wagner's activities and movements would be closely monitored and scrutinized, and address the risks posed by this case.

Mr. Wagner has also requested in the alternative that the Court release him to the La Pasada Halfway House. A residential reentry center (RRC) such as La Pasada is a structured, supervised environment. Facility staff monitor a resident's location and movement twenty-four hours a day. Residents are only permitted to leave the facility with prior approval from staff. Staff also administer

random drug and alcohol tests and conduct random in-house counts throughout the day. *See, e.g., United States v. Ray,* 578 F.3d 184, 201 n. 16 (2d Cir. 2009) (citing Federal Bureau of Prisons, http://www.bop.gov/locations/cc/index.jsp). There are restrictions on phone privileges, visitation rights, management of living quarters and food, and limitations on the types of goods and reading materials that a resident can bring into the facility. *United States v. Mori*, 798 F. Supp. 629, 633 (D. Ha. 1992), *overruled on other grounds by Reno v. Koray,* 515 U.S. 50, 54-65 (1995). The type of criminal conduct alleged in this case could not occur within such a closely controlled and supervised environment. Mr. Wagner is hopeful that the Court will release him to the third-party custody of his parents, however, placement at La Pasada Halfway House would also be a reasonable alternative release plan.

## CONCLUSION

For the foregoing reasons, Mr. Wagner respectfully requests that the Court grant Defendant's Sealed Opposed Motion to Revoke Magistrate Judge's Detention Order, order that Mr. Wagner be released to the third-party custody of either his parents or the La Pasada Halfway House, and for any other appropriate relief. The United States has failed to establish that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, and therefore Mr. Wagner should be released.

        Respectfully Submitted,

        **FEDERAL PUBLIC DEFENDER**
        111 Lomas Blvd. NW, Suite 501
        Albuquerque, NM 87102
        (505) 346-2489
        (505) 346-2494 Fax
        Noah_Gelb@fd.org

        ***Electronically filed June 25, 2025***
        /s/ Noah W. Gelb
        NOAH W. GELB, AFPD
        Attorney for Jamison Wagner